United Steelworkers of America, AFL-CIO *v.*
Westinghouse Electric Corporation,
Appellant.

Argued March 27, 1963. Before BELL, C. J., MUS-
MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS,
JJ.

*John G. Wayman,* with him *Leonard L. Schein-
holtz, David L. Trezise,* and *Reed, Smith, Shaw & Mc-
Clay,* for appellant.

*Emil E. Narick,* with him *Ines W. Cordisco,* for ap-
pellee.

OPINION BY MR. JUSTICE JONES, January 23, 1964:
The main issues on this appeal are: (1) whether
certain grievances submitted by the United Steelwork-
ers of America, AFL-CIO (Union), to Westinghouse
Electric Corporation (Westinghouse), are arbitrable
under the terms of the parties' collective bargaining
agreement? (2) whether a state court has jurisdiction
to compel arbitration of such grievances when such
grievances are arguably within the jurisdiction of the
National Labor Relations Board (Board)?
Westinghouse operates Bettis Atomic Power Labo-
ratory at two locations in Allegheny County. Both

Westinghouse and the Union are subject to the jurisdiction of the Board which, on June 18, 1959, certified the Union as the collective bargaining agent for the employees of Westinghouse's works engineering department at both Bettis plants.

On November 6, 1959, Westinghouse and the Union entered into a collective bargaining agreement (the agreement) for a term ending December 1, 1963. Sometime thereafter, alleging that Westinghouse had violated the agreement by contracting out maintenance painting to employees outside the bargaining unit, the Union requested Westinghouse to submit the matter to arbitration, a request which Westinghouse refused. Later on, alleging that Westinghouse had required an employee, one Herbert Boczar, a plumber, to perform carpenter work, the Union requested Westinghouse to submit the matter to arbitration, a request which Westinghouse refused.

On January 22, 1962, the Union instituted an equity action in the Court of Common Pleas of Allegheny County against Westinghouse wherein the Union sought an order directing Westinghouse to arbitrate both disputes under the agreement. Eventually,[1] Westinghouse filed an answer containing new matter to the Union's complaint and, after a reply by the latter, the Union moved for judgment on the pleadings.

On November 16, 1962, the court entered judgment on the pleadings and directed that both disputes be submitted to arbitration. From that decree this appeal was taken.

Westinghouse's contentions are three-fold: (1) that, *on the posture of the record,* judgment on the pleadings could not be entered; (2) that these disputes are not arbitrable under the provisions of the agreement; and (3) that the state court lacked juris-

---

[1] After Westinghouse had filed preliminary objections, the Union amended its complaint.

diction to compel arbitration inasmuch as the Board had exclusive jurisdiction over these disputes.

The first contention goes to the right of the court below to enter judgment on the pleadings on the state of the record. Capsulized, Westinghouse urges that, even though the Union requests that the two complaints, called grievances, be submitted to arbitration, the complaint fails to attach the alleged written grievances and to aver that such complaints or grievances were processed in the course of the grievance procedure outlined in the agreement between the parties and, therefore, on the face of the record, there is no showing on the record that such complaints or grievances were either ripe for arbitration or arbitrable under the agreement. The thrust of this argument is that, absent the production of facts in proof that the grievance procedure was followed, the court below could not enter judgment on the pleadings.

The complaint (paragraphs 5, 6, 7 of the first count and paragraphs 8, 9, 10 of the second count) avers that the Union discussed the grievances with Westinghouse *"through the steps provided in the agreement"*, that an agreement in settlement of such grievances was not reached and that arbitration was requested and refused. Copies of the agreement and letters from Westinghouse in reference to such alleged grievances were attached to the complaint. By way of answer, Westinghouse admitted filing of the complaints or grievances by the Union, denied such complaints constituted "grievances" under the agreement (Section XXI, 1, (c)), admitted discussion of such complaints and its refusal to arbitrate such complaints. Neither in the answer nor new matter does Westinghouse aver that the processing of the complaints did not follow the grievance procedure outlined in the agreement.

We are in full agreement with the legal principles set forth by Westinghouse in respect to this conten-

tion: (a) that arbitration is a matter of contract and that whether a party to a contract is bound to arbitrate and what issues, if any, are to be arbitrated are matters for the court to determine from the provisions of the contract (*Sinclair Refining Co. v. Atkinson,* 370 U.S. 195, 82 S. Ct. 1328; *Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S. Ct. 1347); (b) that only in cases clear and free from doubt may judgment be entered on the pleadings (*Breckline v. Metropolitan Life Ins. Co.,* 406 Pa. 573, 577, 178 A. 2d 748; *Baxter v. Philadelphia,* 385 Pa. 424, 427, 123 A. 2d 634; *Kittaning Coal Co. v. Moore,* 362 Pa. 128, 66 A. 2d 273). The area of our disagreement lies in the application of such law to the instant factual situation.

Our inquiry *under the pleadings* is not whether the complaints or grievances presented by the Union were *processed* properly under the agreement; Westinghouse by its pleadings has foreclosed that issue. On the contrary, the issue raised by the pleadings is whether such complaints or grievances are arbitrable under the provisions of the contract and the determination of such issue requires the production of no additional facts to enable the court to act. In our opinion, the pleadings clearly and adequately present this issue in such manner that the court below properly decided that it could on the posture of the record determine whether judgment should be entered on the pleadings. In this respect, Westinghouse's contention is without merit.

The next contention of Westinghouse is that neither of the two complaints or grievances presented by the Union are subject to arbitration under the provisions of the contract.

In considering this question, we bear in mind that the arbitration of labor disputes is not a matter of compulsion but a matter of contract and agreement between the parties and that, absent an agreement be-

tween the parties to arbitrate an issue, no court can compel the parties to arbitrate that issue. Furthermore, in determining whether labor disputes are arbitrable or, indeed, in determining any issue in connection with collective bargaining agreements, we are bound to apply the substantive principles of federal labor law (*Teamsters Local 174 v. Lucas Flour Co.*, 369 U.S. 95, 82 S. Ct. 571).

Under Section XXII, A,1, of the instant agreement, the Union and Westinghouse agreed to submit to arbitration, upon the written request of either party, any grievance "involving action taken or a failure to act" which involved, inter alia, "the interpretation, application or violation of a provision of [the agreement], . . . ." The Union urges that, by "contracting out" work to another bargaining unit and by an improper assignment of Boczar to work, Westinghouse violated the agreement and that whether such actions on Westinghouse's part constitute violations of the agreement are arbitrable issues under the provisions of the agreement.

In *Warrior,* supra, the United States Supreme Court considered the provisions of a collective bargaining agreement which contained, as in the case at bar, a clause which reserved to management all functions normally associated with management and which, as in the case at bar, contained no specific provision therein with regard to the right of management to subcontract or "contract out" work. In holding that a dispute between a union and management concerning the right of management to "contract out" work constituted an arbitrable issue, the Court stated (pp. 584-585): "Contracting-out work is the basis of many grievances; and that type of claim is grist in the mills of the arbitrators. A specific collective bargaining agreement may exclude contracting-out from the grievance procedure. Or a written collateral agreement may

make clear that contracting-out was not a matter for arbitration. In such a case a grievance based solely on contracting-out would not be arbitrable. Here, however, there is no such provision. Nor is there any showing that the parties designed the phrase 'strictly a function of management' to encompass any and all forms of contracting-out. In the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail, particularly where, as here, the exclusion clause is vague and the arbitration clause quite broad. . . . The grievance alleged that the contracting-out was a violation of the collective bargaining agreement. There was, therefore, a dispute 'as to the meaning and application of the provisions of this Agreement' which the parties had agreed would be determined by arbitration. . . . Whether contracting-out in the present case violated the agreement is the question. It is a question for the arbiter, not for the courts." See also: *Westinghouse Electric Corp. v. Local 1790, I.A.M.,* 304 F. 2d 449.

. If any doubt existed as to the federal law on this subject, such doubt has now been resolved by a most recent decision (January 6, 1964) of the United States Supreme Court in *Carey v. Westinghouse Electric Corporation,*[2] 375 U.S. 261, 84 S. Ct. 401, 32 Law Week 4080. While the grievances alleged in *Carey,* i.e., improper work assignments by management, were only in part similar to the grievances in the case at bar, the sweep of *Carey* clearly indicates that both instant grievances are arbitrable. In *Carey* the Supreme Court

---

[2] In its brief, in the case at bar, Westinghouse conceded that the arbitration clause in *Carey* was almost identical with that in the case at bar, that the decision in *Carey* would have a "substantial impact upon the instant case" and that the decision of the New York Court of Appeals in *Carey* dealt with "points at issue here".

held that the grievances were arbitrable under the agreement and thus reversed an order of the New York Court of Appeals which had refused to compel arbitration. *Carey* contraindicates the contention now raised by Westinghouse that the instant grievances are not arbitrable under the agreement.

Lastly, Westinghouse contends that the principle of federal preemption in the labor field applies to the question of the arbitration of these disputes and that, since the instant grievances are matters at least arguably within the jurisdiction of the Board, the state court had no jurisdiction to act in this matter. This contention is clearly controlled by *Carey*. *Carey* holds that, even though the matters sought to be arbitrated are arguably within the Board's jurisdiction, the existence of such Board remedy does not bar action either in the federal courts under Section 301 of the Labor Management Relations Act[3] or in the state courts. The fact that there is a possibility of a conflict between the determination of the arbitrator and that of the Board in connection with such disputes is no barrier to jurisdiction in the state courts to compel arbitration under collective bargaining agreements.

Decree affirmed. Costs on Westinghouse.

---

[3] Labor Management Relations Act of 1947, as amended in 1959, 29 U.S.C. §141 et seq.